Peelle, J.,
delivered the opinion of the court:
The question in this case arises on the defendants’ demurrer to the petition on the ground that the facts stated are insufficient to constitute a cause of action.
The material averments in the petition, though somewhat argumentative, are in substance that the claimant was appointed and served as a letter-carrier in the city of Philadelphia, and that while so serving there occurred between his trips intervals of time, ranging from thirty minutes to two hours, when no active postal duties were performed, and for which no compensation has been made to him; that by the act of May 24,1888, (25 Stat. L., 157), constituting eight hours a day’s work for letter carriers,” and providing extra pay for those “employed a greater number of hours per day than eight,’ he is entitled to compensation for such intervals of time in proportion to his salary, though no active postal duties were required of or performed by him.
•This the claimant contends on the theory that the act referred to means eight consecutive hours, thereby including so much of the time between said trips as may be necessary therefor, and that, therefore, the excess of time for which he claims necessarily begins from the expiration of the eight hours thus reckoned as continuous.
The defendants contend that the case is ruled by the decision in the King Case (32 C. Cls.,B., 234), and this the claimant admits, but he seeks a reversal of that case on the ground, as he contends, that it is in conflict with the decision of this and *528 the Supreme Court in the case of Post (27 C. Cls. R., 244, and Gates, 148 U. S., 134).
The act referred to is as follows:
• “ Be it enacted by the Senate and Souse of Representatives of the United States of America in Congress assembled, That hereafter eight hours shall constitute a day’s work for letter carriers in cities or postal districts connected therewith, for which they shall receive the same pay as is now paid for a day’s work of a greater number of hours. If any letter carrier is employed a greater number of hours per day than eight he shall be paid extra for the same in proportion to the salary now fixed by law.”
In the Post Case (supra) this court held that a letter carrier was entitled to his. salary upon the basis of eight hours a day, whether work was furnished him or not, and that if employed in excess of eight hours in any one day he was entitled to extra pay therefor; that in computing his time the Department could not give him an excess one day and a deficit another, and then by that process make a monthly average. In other words, the effect of the decision is that if a letter carrier be employed in excess of eight hours on any day during the month* he is entitled to extra pay therefor, although during the residue of such month he may have worked less than eight hours each day. Furthermore, under section 647, Postal Regulations, which provides that “carriers shall be employed in the delivery and collection of mail matter and during the intervals between their trips may be employed in the post-office in such manner as the postmaster may direct, but not as clerks,” it was held that a carrier was entitled to extra pay for work' in the post-office during such intervals in the distribution of mail matter. On appeal to the Supreme Court that case was affirmed (148 U. S., 124), on the theory that such employment was not inconsistent with his duties as a letter carrier.
The provision of the circular of February 19, 1891, which claimant contends was relied upon in the King case, was not involved in the Post case, and hence there was no ruling in that case either in the Supreme Court or in this court which conflicts in any way with the decision in the King case.
The only question in the case of United States v. Gates (148 ,U. S., 134) was that in computing the time employed in excess *529 of eight hours a day no deduction shall be made therefrom by reason of his having worked less than eight hours a day on Sundays and holidays.
The only provision of the circular of February 19, 1891, involved in that case, though the provision relied upon in the King case was recited, was the ruling in respect of the method of ascertaining the number of hours a carrier may have worked in excess of eight hours a day — i. e., “multiply the number of days worked during the month by eight and-subtract the product thus obtained from the aggregate number of hours worked, and the remainder will be the extra time for which the carrier is entitled to pay.”
That method, the court said, was not correct, for the reason that to sustain the interpretation given thereto by the Department it would be “necessary to read in it by construction the words on an average’ — i. e., if any letter carrier is employed on an average a greater number of hour's a day than eight, he shall be paid extra for the same; ” that the court say they were “not at liberty to do” for the reason that the carrier was “ entitled to eight hours’ work, and to his pay if work is not furnished him.”
The effect of that decision is that while a letter carrier’s salary is based on eight hours for a day’s work, he can not be deprived thereof because given less than eight hours’ work in any one day, nor can he be required to work more than eight hours in any one day without extra compensation therefor; but this does not mean consecutive hours, as was held in the King Oase (supra).
In the King case an entirely different provision of the circular was in question, viz: “The time necessarily consumed in the performance of the service between reporting for duty and end of duty is the actual time to be allowed, and the interim between deliveries is the carrier’s own time and can not in any case be charged against the United States.”
True, that provision of the circular was relied upon in the King case, but it was so relied upon because the provision was a correct interpretation of the act as we understood it.
The legislative history of the act shows that it was not the intention of the Congress to constitute eight consecutive hours a day’s work, for the word consecutive was, on the recommenda *530 tion of the committee reporting the bill to the House, stricken out, as set forth in the King case, and the language of the act, independent of that action, bears that construction.
In the Post case and Gates case the claim was for actual postal duties; the first for work in the distribution of mail matter in the post-office during the intervals between trips; while in the second the carrier was employed in the actual delivery of the mails in excess of eight hours a day.
No service was performed in the King case between trips; hence the provision of the circular relied upon in that case was not involved in either of the other cases, and it is not therefore in conflict with them. In the King case no claim was made for intervals of time exceeding thirty minutes, as in that case it was conceded that the carriers were not entitled to compensation therefor, as they could utilize such time to their own advantage.
While the salary of a letter carrier is based on eight hours for a day’s work, during which, time he is presumed to be employed, yet no presumption can arise therefrom that he is employed “a greater number of hours per day than eight;” hence to be so employed, i. e., engaged in active postal duties, he must be under contract or orders from some one authorized to direct such service. In other words, to be so “ employed” requires some act on the part of the postmaster looking to such employment before a contract can be implied to pay therefor; and in this connection we said in the King case:
' “Certainly there is no law which authorizes the Government or its officers to ‘employ’ a person to perform no service. Every law which authorizes the appointment or employment of persons in the public service presupposes some duty or service to be performed thereby. True, at times during such appointment or employment persons will have no duty or service to perform, but we are aware of no law which authorizes compensation for such idle time beyond that which is necessarily covered by their regular pay, salary, or compensation fixed by law.”
In the Post case it was said by the Supreme Court: “It is necessary only that he be a letter carrier, and be lawfully employed in work that is not inconsistent with his general business under his employment as a letter carrier.”
To be “ employed in work,” within the meaning of the act, necessarily means active duties, as such employment can not *531 arise so as to charge the Government without the knowledge and consent of the postmaster, who is the agent of the defendants, to direct such extra service.
In brief, employment for such extra service does not depend alone upon appointment and salary as a letter carrier; that is the basis, but unless employed by the postmaster to perform some active postal duties, consistent with his duties as a letter carrier, in excess of eight hours per day, he is not entitled to extra pay therefor, and this we say independent of the regulations of the Post-Office Department, for regulations or no regulations the statute makes employment a condition precedent to extra pay, and employment means active postal duties, as was held in the King case, and not idle time for which the Government receives no benefit; and this was the view of the circuit court of appeals, fifth circuit, in the case of Langston (85 Fed. Pep., 613), which went up on appeal from the United States district court for the northern district of Alabama, wherein the judgment of the court below, holding that the letter carrier was entitled to compensation for the intervals of time between trips, was reversed. Therefore, on a review of the question presented, we are convinced of the correctness of the ruling in the King case, and the demurrer is sustained and the petition is dismissed.