Weldon, J.,
delivered the opinion of the court:
The claimant in this proceeding seeks compensation for extra time, in which he was engaged as a watchman in the Hydro-graphic Office of the Navy Department beyond eight hours each night. The facts show that he was appointed as such watchman on the 23d day of August, 1886, temporarily, on the 30th day of August reappointed and served until the 10th of March, 1894, when he was discharged. His hours of service were from 5 p. m. to 7 a. m., and he was required to be continuously on duty from 5 p. m. on Saturday until 7 a. m. the following Monday. When a legal holiday fell upon Sunday he was required to be on duty continuously from 5 p. m. on Saturday until 7 a. m. the following Tuesday morning.
*259 During tbe time be was employed from tbe 19tb day of May, 1S88, to tbe 19tb day of May, 1894, tbe date at wbicb tbe suit was brought, be was engaged as a watchman over and beyond eight hours per night, tbe aggregate of 17,000 hours, wbicb at tbe rate of eight hours per day would amount to 2,125 days. For that period of time be has been paid a salary as watchman of $720 per year.
Tbe law upon which tbe plaintiff bases bis right to recover as alleged in tbe petition and in tbe argument is section 3738, Devised Statutes, wbicb is as follows:
“Eight hours shall constitute a day’s work for all laborers, workmen, and mechanics who may be employed by or on behalf of tbe Government of tbe United States.”
It is insisted that tbe term “laborer” or “workman” includes tbe claimant, and was intended to protect him against being required (in tbe absence of a special agreement) to labor or perform service beyond eight hours each day; and if be was engaged beyond that time, be is entitled to recover pro rata for tbe time employed beyond eight hours.
Tbe Act of June 25, 1868 (15 Stat. L., 77), now constituting, in substance, section 3738, Revised Statutes, was intended, in tbe absence of an agreement, to regulate and determine a day’s work, of certain persons, and is to be enforced and applied so as to effectuate tbe purpose of tbe legislature. Its purpose is, in tbe absence of a contract, to regulate tbe hours of toil on tbe. part of certain persons in tbe employ of tbe Government, and to direct what time shall constitute a day’s work. As is said - in tbe case of United States v. Martin (94 U. S., 400):
- “It is not a contract between tbe Government and its laborers that eight hours shall constitute a day’s work. It neither prevents the Government'from making agreements with them by wbicb their labor may be more or less than eight hours a day nor does it jxrescribe tbe amount of compensation for that or any other number of hours’ labor.”
Tbe claimant was appointed under tbe Aet of July 31, 1886 (24 Stat. L., 172, 197, 209); by that act an appropriation was made of tbe sum of five thousand eight hundred and sixty dollars, for tbe pay of two clerks of class two, one clerk of class one, one watchman, and one office attendant. Tbe watchman was to be paid at tbe rate of seven hundred and twenty dollars per annum, and laborers at tbe rate of six hundred and sixty dollars per annum. There is a specific appropriation of *260 forty thousand dollars to pay draughtsmen, engravers, copyists, copperplate printers, printers’ apprentices, aDd laborers.
Watchmen, by the terms of the statute, are contradistinguished from laborers by being specifically provided for in a separate and distinct clause of the statute. The term laborer and watchman are well understood in popular parlance, and are clearly distinguished from each other in popular acceptation. Words are to be taken and applied in their ordinary sense and meaning, unless there is something to indicate that they are used in a different sense and a more enlarged or circumscribed signification. (Marks et al. v. United States, 161 U. S. R., 297; Marks et al. v. United States, 28 C. Cls. R., 168.)
The case of Post v. United States (148 U. S., 124, and 27 C. Cls. R., 244) involved the right of a letter carrier to compensation for service beyond eight hours a day and is founded on the Act of May 24, 1888 (25 Stat. L., 157), in which it is-provided:
“That hereafter eight hours shall constitute a day’s work for letter carriers in cities or postal districts connected therewith, for which they shall receive the same pay as is now paid for a day’s work of a greater number of hours. If any letter-carrier is employed a greater number of hours per day than eight, he shall be paid extra for the same in proportion to the salary now fixed by law.”
It will be seen by this act that it is expressly provided, if service is required beyond eight hours per day, there is a right to compensation subject to the qualification that the service must relate exclusively to the “free distribution and collection of mail matter.” The Supreme Court and this court held, that-the compensation allowed the claimant by the judgment did not come within section 1764 and 1765 of the Bevised Statutes.
The question in controversy in this proceeding is substantially the same that was litigated and determined in the case of Averill (14 C. Cls. R., 200) and the case of Collins (24, id. 340),. in both of which cases it was decided that the claimant was not entitled to recover. In the Averill Case it is held that, “Where an employé in the public service works twelve hours, a day, is paid by the day, and accepts the payment, he is excluded from maintaining that every eight hours constituted a day’s work under the provisions of the eight-hour law. The eight-hour law does not establish an inflexible rule for the pay *261 meut of wages. It was passed in deference to a sentiment of philanthropy, and its intent is not to increase wages, but to elevate the condition of laboring men by diminishing their hours of labor.”
In the Collins Case, it is said that “The duties of a watchman employed to guard property during the night negatives the theory that his employment was for eight hours’ labor per day.”
The law under which claimant was appointed limited the right of appointment to one watchman, at a salary of $720 per year, and thereby precluded the officers of the United States and the claimant from the exercise of the power of contractors to increase the compensation beyond the limit of the appropriation. The claimant when he entered upon the performance of the service had notice of his legal rights and the inability of the officers of the Government to increase the liability of the defendants beyond the appropriation of the statute. The findings show that the claimant protested against his hours, and asked a little more time off, but did not object to the excessive time beyond eight hours for which he now brings his suit. When he protested he was informed that nothing could be done for him, and if he did not want to stay he might quit and let some other person have the place.
Notwithstanding the refusal of officers in charge to lessen the hours of service by permitting temporary absence, the claimant remained in the service until he was discharged on the 10th of March, 1894.
The findings show that in the various Departments there are relays of watchmen, so that no one is required to be on watch beyond eight hours, and for that he is allowed a legal day’s service; but in the case of the Hydrographic Office that plan could not be adopted, for the reason it is only entitled to one watchman, whose service must necessarily be continuous during the hours requiring the service of a watchman.
The statute upon which the suit is based uses three designations of persons who are entitled to the benefits of its provisions, to wit, “laborers, workmen, and mechanics.” To construe any of these designations as including “watchmen” would be, in the judgment of the court, doing violence to the language of the law, and carrying the purpose and object of the statute beyoud the limits plainly marked by the phrase *262 ology of tlie act. The statute must be applied according to its plain and unequivocal words, and not construed by rules of strained interpretation. Petition dismissed.