BIDWELL v. GRAND TRUNK WESTERN RAILWAY CO.

1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—AUTHORITY OF AGENT—OVERTIME.

In an action by an employé of a railroad company to recover for overtime, evidence examined, and *held*, to justify an instruction leaving to the jury the question whether defendant's agent, who employed plaintiff, had authority to contract to pay plaintiff for his overtime, as indicated by the agent's conduct and duties and his relation to the company and the men under him.

2. SAME—RECEIPTS IN FULL—EFFECT.

Where a railroad employé under contract for a stipulated sum

per month, with extra pay for overtime, signed a pay roll containing a receipt in full each month on receipt of the stipulated monthly wage, but spoke to the railroad company's agent, who employed him, from time to time about the overtime, and was assured he should be paid for it, the question whether he in fact understood he was receiving pay in full each month was for the jury.

3. SAME—WAIVER.

Plaintiff having at different times called the attention of defendant's agent with whom the contract was made, to the fact that his pay for overtime was being withheld, and being assured that he would receive the pay, the question of waiver or estoppel by signing the pay roll without protest is for the jury.

4. SUNDAY—LABOR—WORK OF NECESSITY.

A checker in a railroad company's freight sheds cannot recover for overtime put in on Sundays in checking for over and short freight and doing clerical work which could as well have been performed on Monday by the employment of more help, such work being in no sense work of necessity.

Error to St. Clair; Tappan, J. Submitted February 12, 1907. (Docket No. 118.) Decided June 3, 1907.

Assumpsit by George M. Bidwell against the Grand Trunk Western Railway Company for work and labor. There was judgment for plaintiff, and defendant brings error. Affirmed on condition.

*H. Geer*, for appellant.

*Stevens, Graham & Stevens*, for appellee.

MONTGOMERY, J. The plaintiff sued to recover for overtime while employed by the defendant as foreman in its freight sheds at Port Huron. The claim was for 1,110 hours overtime, made up of 425 hours during week days and 685 hours on Sunday. The plaintiff recovered pay for both items in full; but on motion for a new trial he was required to remit $65.07, being one-half the amount recovered for overtime for Sunday work; the court being of the opinion that the only definite basis upon which to

figure the time employed on Sundays was the testimony of plaintiff that he put in at least five hours on each Sunday. The plaintiff remitted the amount, and defendant has brought error, claiming, *first*, that plaintiff is not entitled to recover any sum for overtime; and, *second*, that under no circumstances could he recover for the Sunday work. The facts are that the plaintiff had previously been employed by defendant as checker in the freight sheds at Port Huron; that while working as checker he received $1.40 a day for 10 hours a day, and was paid overtime for the time put in in excess of 10 hours a day. During his employment in the service for some 10 years he received each month from the pay car his check and signed the pay roll therefor. After his employment as foreman, as hereinafter stated, plaintiff continued to receive his pay monthly at the rate of $50 per month, but no payment for overtime. He signed vouchers, which at the head contained the following recital:

"Received from the Grand Trunk Railway System, the amount set opposite my name in the following list, in full of all demands for work during the regular and irregular working hours of said railway, up to and including the date of this pay roll."

Plaintiff testified that in signing the pay roll he did not know that it contained this receipt; that he supposed that he signed for the $50 that he received; that he frequently mentioned his overtime to Mr. Waters, defendant's agent at Port Huron, who assured him that it would be paid for.

The plaintiff's testimony tended to show that, when he was employed as foreman, he made his contract with Mr. Waters that he should receive $50 per month and pay for overtime. Mr. Waters denies the agreement for overtime, and testified that he had no authority to enter into any contract with the plaintiff to pay for overtime. He also testified that the only persons having authority to make contracts for wages are the manager at Montreal, and the superintendent of the western division at Detroit. His

testimony, properly construed, indicates that this limitation upon his power was a limitation upon the power to fix wages. It is undoubted that he made the contract with plaintiff, and a fair construction of his testimony shows that he had authority to hire and discharge men. In answer to the question, on cross-examination, "You do know that you hire and discharge such men as you wish to hire and discharge?" he answered:

"I have got my pay roll staff to go by. I can discharge any of the men for cause. The superintendent discharges some of them. I see that the necessary men to do the work are there."

The question is not so much as to what the actual authority of Mr. Waters was as what his apparent authority was. The circuit judge charged the jury:

"It is not necessary that there shall be written authority in order to establish authority, but you must find some authority on the part of Mr. Waters, as indicated by his conduct and his duties here and his relation to the railroad company and his relation to the men under him. That is the way you will determine the question of authority and right."

We think the testimony in the case justified this instruction, and that there was ample testimony of a holding out of Mr. Waters as authorized to make the contract in question. The circuit judge charged the jury as to the question of the pay roll as follows:

"If you find that those conditions afford plaintiff a reasonable opportunity to see and know the purport and effect of these receipts, then the plaintiff cannot recover. In this connection you are to consider the conditions under which he signed. You are to determine whether the methods employed by the officers in charge of the car gave him a reasonable opportunity to know the statements at the head of the column. If you find that he had no such reasonable opportunity, then the receipt does not bind the plaintiff."

We think, in view of the testimony of plaintiff that he from time to time spoke to Mr. Waters about his overtime,

that it was a question for the jury as to whether he in fact understood that he was receiving payment in full each month.

Defendant's counsel claim that the case falls within *Bartlett* v. *Railway Co.*, 82 Mich. 658, and *Davis* v. *Boat Works*, 121 Mich. 261. We think, however, that upon this branch the case is ruled by *O'Boyle* v. *City of Detroit*, 131 Mich. 15. In the present case the plaintiff showed a distinct contract to be paid for his overtime. He showed that, while receiving his pay for regular hours during the period of employment, he distinctly called the attention of the agent, with whom his contract was made, at different times to the fact that his pay for overtime was being withheld, and was assured that he would receive the pay. In this respect the case closely resembles *O'Boyle* v. *City of Detroit*. We think it was a question for the jury as to whether the plaintiff waived or estopped himself from receiving pay for overtime.

Upon the question of the right to recover for the Sunday service, we are constrained to say that there is nothing in the record to show that the work rendered on Sunday was a work of necessity. In summing up the necessity for the Sunday work, the plaintiff testified as follows:

"*Q.* What would be the result, instead of going down there Sunday and the other men going down there Sunday, having to go down Monday morning and do their work that they did on Sunday on Monday morning before going to the other work?

"*A.* The result would be that we would have to have more help to do it. Freight that would have to be handled on Monday would be stayed. It could not be handled. It could not be moved."

It cannot be said that this presents a case of anything more than convenience. It was not a case of necessity. No freight was received at the sheds on Sunday, and none was delivered except perishable freight, and it was not disputed that another man was paid for attending to this freight. The work which Mr. Bidwell performed on

Sundays was checking the shed for overfreight and short freight and performing clerical work. There is no doubt that this could have been done on Monday except for the fact that it might have required more help, as stated. The plaintiff is not entitled to recover for Sunday service under the rule laid down in *Allen* v. *Duffie,* 43 Mich. 1; *Com.* v. *White,* 190 Mass. 578 (5 L. R. A. [N. S.] 320).

A new trial must be granted, unless the plaintiff shall remit from the judgment the further sum of $65.07. The defendant will recover costs of this court.

McALVAY, C. J., and CARPENTER, GRANT, and BLAIR, JJ., concurred.